# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael David Logering and
Wendy Ann Acker,

               Plaintiffs,

v.

Morrison County Sheriff's Department;
Shawn Larsen, *Sheriff, in capacity of
Morrison County Sheriff's Department*;
Jason McDonald, *Deputy, in capacity of
Morrison County Sheriff's Department*;
Joel Gross, *Sergeant, in capacity of
Morrison County Sheriff's Department*;
Hasten Warnberg, *Deputy, in capacity
of Morrison County Sheriff's
Department*; David Kalis, *Deputy, in
capacity of Morrison County Sheriff's
Department*; Rick Matteson, *Deputy, in
capacity of Morrison County Sheriff's
Department*; Jason Worlie, *Chief Deputy,
in capacity of Morrison County Sheriff's
Department*; Eric Hannekin, *Chief of
Police, in capacity of Morrison County
Sheriff's Department*; Calvin Tschida,
*Officer, in capacity of Pierz Police
Department under direction from Morrison
County Sheriff's Department primary
officer on scene*; Brad Bordwell, *Captain,
in capacity of Minnesota State Patrol,
under direction from Morrison County
Sheriff's Department primary officer on
scene*; Daniel Owens, *Trooper, in capacity
of Minnesota State Patrol, under direction
from Morrison County Sheriff's Department
primary officer on scene*; Jason T. Brown,
*Trooper SP477, in capacity of Minnesota
State Patrol, under direction from Morrison*

Civ. No. 23-0177 (JWB/LIB)

**ORDER
DISMISSING CASE**

*County Sheriff's Department primary officer
on scene*; Dave Kicker, *in the capacity of
Morrison County Sheriff's Department*;
Tony Athman, *in the capacity of Morrison
County Sheriff's Department*; Mary Swenson,
*in the capacity of Morrison County Sheriff's
Department*; Bill Vanden Avond, *in the
capacity of Morrison County Sheriff's
Department*; Brady Pundsack, *in the capacity
of Morrison County Sheriff's Department*;
and All Other Law Enforcement *on scene
8/24/2020 identified on squad cam in the city
of Pierz, Morrison County surrounding the
Logering residence 310 South Main Street
Pierz, MN 56364*,

Defendants.

---

Michael David Logering, pro se Plaintiff.

Wendy Ann Acker, pro se Plaintiff.

Jason M. Hiveley, Esq., Iverson Reuvers Condon, counsel for Defendants.

---

This matter is before the Court on several filings by Plaintiffs Michael David Logering and Wendy Ann Acker: (1) their Complaint (Doc. No. 1), (2)–(3) their Applications to Proceed in District Court Without Prepaying Fees and Costs (Doc. Nos. 4–5 ("IFP Applications")), and (4) their "Motion for Demand Default and Relief" (Doc. No. 7 ("Default Motion")). For the following reasons, the Court dismisses this action without prejudice and denies the IFP Applications and the Default Motion as moot.

# I.   BACKGROUND

## A.   Federal-Court Proceedings

### 1.   The Complaint

This action began on January 23, 2023, when the Court received Plaintiffs' Complaint. (*See* Doc. No. 1, Compl.) It appears that Plaintiffs currently live in Staples, Minnesota, and they previously lived in Pierz, Minnesota, a city in Morrison County. (*See* Compl. 1, 5.[1]) The Complaint names as Defendants the Morrison County Sheriff's Department ("MCSD"); seventeen named law-enforcement officers employed by the MCSD, Pierz's police department, or the Minnesota State Patrol; and an unidentified set of law-enforcement officers "identified on squad cam" as being present during an incident at "the Logering residence" on August 24, 2020. (*Id.* at 3–5.) As the Court understands the Complaint, Plaintiffs mean to sue the individual Defendants in their official capacities.[2]

In a section titled "Amended Complaint"—the Court will address the use of "Amended" below—Plaintiffs group their allegations into six parts. (*Id.* at 7–12.) The

---

[1]    All citations to materials filed in this action use the page numbers provided by the Court's CM/ECF filing system.

[2]    For each named individual Defendant, the Complaint identifies him or her, then states that Plaintiffs are suing him or her "in the capacity of" his or her employer. For example, when listing Defendant Shawn Larsen, Plaintiffs identify him as "Sheriff Shawn Larsen *in the capacity of Morrison County Sheriff's Department*." (Compl. 3 (emphasis added); *see also id.* at 3–5 (using similar format for other named individual Defendants).)

allegations are repetitive and somewhat hard to follow, but the Court understands them as follows.

- The first set of allegations claims that at some unspecified time (likely on August 24, 2020), several Defendants entered a residence—presumably Logering's—and used "[i]llegal [c]hokeholds" on him. (*Id.* at 7.) During the same incident, Plaintiffs report, one or more Defendants allegedly "slammed" Logering's face "into [a] squad vehicle." (*Id.*) Plaintiffs also allege here that authorities placed them in jail, where they experienced various conditions that were ostensibly legally impermissible (i.e., "bugs" in the facility, a faulty toilet, being yelled at by corrections officers). (*Id.* at 8.) Plaintiffs also suggest that Defendants improperly failed to enforce an "HRO"—this presumably means a harassment restraining order—in place on Logering's behalf. (*Id.*)

- The second allegation set asserts that various Defendants entered an unspecified "residence"—again, presumably Logering's—in "warrior-style" and proceeded to "kick[], stomp[], and injur[e]" Plaintiffs. (*Id.*) Plaintiffs also suggest that on this occasion—apparently the incident on August 24, 2020—Defendants entered the relevant residence "without [a] warrant," and that Defendants inflicted at least some injuries on Plaintiffs while Plaintiffs were handcuffed. (*Id.*)

- The third group of allegations reiterate that Defendants failed to enforce an HRO entered on Logering's behalf; this apparently targeted one Lucas Waytashek. (*See id.* at 8–9.) These allegations also suggest that Defendants "[t]amper[ed] with evidence" to hide their failure to properly enforce the HRO. (*Id.* at 9.)

- The fourth cluster of allegations suggests various improprieties in certain state-court prosecutions of Plaintiffs. (*See id.* at 9–10.) As to Logering, state-court records suggest that Plaintiffs mean *State v. Logering*, No. 49-CR-20-1047 (Minn. Dist. Ct.), in which Logering pleaded guilty in November 2021 to one count of fifth-degree assault. (*See* Register of Actions, *State v. Logering*, No. 49-CR-20-1047 (Minn. Dist. Ct.); Pet. to Enter Plea of Guilty in Misdemeanor or Gross Misdemeanor Case Pursuant to Rule 15 at 1, *State v. Logering*, No. 49-CR-20-1047 (Minn. Dist. Ct. Nov. 17, 2021).[3]) The Complaint also refers to a prosecution of Acker that

---

[3]     These state court materials (and others cited in what follows) do not appear anywhere in this action's docket. They are public state-court records, however, so the Court may take judicial notice of them. *See, e.g., Stutzka v. McCarville*, 420 F.3d 757,

the Court cannot find in online state-court records, possibly because the prosecution apparently did not lead to any conviction. (*Cf.* Compl. 10 (stating that Acker "was cleared of all charges").) The alleged improprieties in the two prosecutions include the withholding of "*Brady* material" and MCSD refusals "to provide complaint forms" and respond to "data requests." (*Id.* at 9–10.)

- The fifth batch of allegations are somewhat repetitive, again stating that various Defendants used improper and excessive force (presumably during the incident on August 24, 2020), "failed to get a warrant," and failed to enforce a valid HRO. (*See id.* at 10.) Plaintiffs also suggest that when approaching Logering's residence at some point (again, presumably on August 24, 2020), law-enforcement authorities stated that Logering had "[v]iolent Asperger's disease." (*Id.*) Plaintiffs challenge this diagnosis and suggest that Defendants' conduct impermissibly discriminated against Logering on the basis of a disability. (*See id.*)

- The sixth group of allegations contends that various officers present at the August 2020 incident failed to intervene to prevent other officers' use of excessive force and/or failed to report the misconduct. (*See id.* at 11.[4]) Plaintiffs also state here that certain Defendants underwent investigations by their employers but were not (or have not) been disciplined; Plaintiffs claim that these investigations were (or are) "biased." (*Id.*) Plaintiffs also allege here that in December 2022, Defendants Kicker and Athman, along with an unidentified "Court clerk," violated Plaintiffs' First Amendment rights by not letting Plaintiffs videotape an unidentified court hearing. (*Id.* at 12.)

Plaintiffs assert that federal-question jurisdiction under 28 U.S.C. § 1331 exists for this action. (*Id.* at 6.) They purport to bring federal-law claims, including under (1) 18 U.S.C. § 242; (2) 18 U.S.C. § 241; (3) 42 U.S.C. § 1983; (4) "Title II 12132

---

761 n.2 (8th Cir. 2005) (citing *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999)); *Rubbelke v. Zarembinski*, No. 23-CV-0707 (PJS/ECW), 2023 WL 3094371, at *1 n.1 (D. Minn. Apr. 26, 2023) (citing *Stutzka*).

[4]     The Complaint here actually refers to "8/24/22" (*see* Compl. 11), but given the context, the Court assumes that this is a typographical error and that Plaintiffs actually want to refer here to the incident that occurred on August 24, 2020.

Discrimination and 12133—ADA"; and (5) various federal constitutional provisions. (*See id.* at 6–7.) Plaintiffs also contend that Defendants violated numerous Minnesota "State Statutes, State Policies, county ordinances, regulations or customs." (*Id.* at 7.)

For relief, Plaintiffs demand $1.5 million in punitive damages, as well as compensation for litigation-related expenses. They also request numerous forms of injunctive relief: (1) expungement of Logering's criminal record, (2) the return of certain unspecified property, (3) "public resignations" of "all officers involved in this incident," (4) "removal of Qualified Immunity" for Defendants, (5) a signed "immunity agreement" under which "MCSD and agencies involved" must "have no contact with [Plaintiffs]," and (6) the filing of criminal charges against the various individual Defendants. (*See id.*)

2.      Additional Proceedings

On February 3, 2023, Plaintiffs filed their IFP Applications, which ask the Court to let them proceed *in forma pauperis* ("IFP") in this action. (*See* Doc. Nos. 4, 5.) On March 20, 2023, however—before the Court ruled on the IFP Applications—Plaintiffs paid this action's full filing fee. (*See* Doc. No. 6.)

Alongside their payment, Plaintiffs submitted the Default Motion, which asks the Court to enter a default judgment against Defendants because of their alleged failure to respond to a state-court lawsuit filed by Plaintiffs. (*See* Default Mot. 2; *see also infra* section I.B.) A cover letter for the Default Motion insists that Plaintiffs qualify for IFP status, and further states both that Plaintiffs "have sold [their] only means to transportation to pay [this action's] filing fee" and that they "expect that [their] fees will be refunded" once the Court grants the IFP Applications. (*See* Doc. No. 7-1 at 1.)

This action's docket notes that Plaintiffs were issued summons in March and April 2023, and that Plaintiffs filed certain service-related materials with the Court on April 25, 2023. (*See* Doc. Nos. 11, 12, 15, 16, 17.) Presumably based on these filings, the docket indicates that various Defendants owe a response to the Complaint on or before May 9, 2023. (*See* Doc. No. 17.)

### B.     Plaintiffs' State-Court Action

As discussed above, Plaintiffs' Complaint contains various references to a state-court action. That action appears to be one that Plaintiffs themselves filed in August 2022— *Logering v. Morrison Cnty. Sheriff's Dep't*, No. 49-CV-22-1136 (Minn. Dist. Ct.). (*See* Compl. 7.) That action's complaint alleges (broadly speaking) that various law-enforcement officials associated with the Minnesota State Patrol, Morrison County, and/or the City of Pierz violated state and federal law in their interactions with Plaintiffs. (*See Logering v. Morrison Cnty. Sheriff's Dep't*, No. 49-CV-22-1136, Civil Compl. 2 (Minn. Dist. Ct. Aug. 26, 2022).) Plaintiffs allege that this misconduct occurred between May 2019 and the then-present day, including in particular an incident on August 24, 2020. (*See id.* (noting incident).) The vast bulk of the allegations, however, focus on the August 2020 incident. (*See id.* at 3–4.) All this is quite familiar, of course—in other words, large chunks of this federal suit duplicate Plaintiffs' earlier-filed state-court action.[5] Indeed, almost all of the state action's defendants are Defendants in the federal action as well. (*Compare id.* at 2–3 *with* Compl. 2–5.)

---

[5]     Indeed, this action's Complaint seems to suggest that Plaintiffs are trying here to remove the state-court action to this Court. (*See* Compl. 7 (referring to "[n]otice of

Plaintiffs' state case has cycled through numerous judges, and there is apparently a hearing scheduled in June 2023 to address Plaintiffs' motion requesting that the current judge recuse herself. (*See Logering v. Morrison Cnty. Sheriff's Dep't*, No. 49-CV-22-1136, Register of Action (Minn. Dist. Ct.); *Logering v. Morrison Cnty. Sheriff's Dep't*, No. 49-CV-22-1136, Not. of Hr'g 1 (Minn. Dist. Ct. Apr. 3, 2023).) Furthermore, the MCSD filed a motion to dismiss in January 2023 that is still pending. (*See, e.g.*, *Logering v. Morrison Cnty. Sheriff's Dep't*, No. 49-CV-22-1136, Not. of Mot. to Dismiss and Mot. to Dismiss (Minn. Dist. Ct. Jan. 23, 2023).)

## II.   ANALYSIS

### A.   IFP Applications

As a threshold matter, the Court addresses Plaintiffs' IFP Applications and their payment of this action's filing fee. The IFP Applications indicate that both Plaintiffs financially qualify for IFP status. (*See generally* IFP Appls.) The Court therefore concludes that, had it addressed the IFP Applications earlier, Plaintiffs may well have elected not to sell their "only means to transportation." The Court will therefore order the

---

removal" from district court).) To the extent that Plaintiffs mean for their filings here to constitute a notice of removal, the attempt fails. First, 28 U.S.C. § 1446 establishes various procedures for removing civil actions to federal court, and Plaintiffs have failed to comply with those requirements. *See, e.g.*, 28 U.S.C. § 1446(a)–(d). Furthermore, the removal statutes grant the removal privilege only to state-court *defendants*; state-court *plaintiffs*—like Plaintiffs here—cannot remove matters to federal court. *See, e.g.*, *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954); *Beacham v. Planet Home Lending*, No. 20-CV-0727 (WMW/LIB), 2020 WL 4274743, at *1 (D. Minn. Apr. 24, 2020), *report and recommendation adopted*, 2020 WL 4271699 (D. Minn. July 24, 2020); *see also* 14C Federal Practice and Procedure § 3730 (Westlaw, updated through April 2023) (citing authorities).

Clerk of Court to refund to Plaintiffs their payment of this action's $402.00 filing fee, and will treat this matter as though the IFP Applications are still pending.

**B.    Standard of Review**

As noted above, Plaintiffs' IFP Applications suggest that, financially speaking, Plaintiffs qualify for IFP status. That is not the end of the story, however. Under the federal statute governing IFP actions, as relevant here, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [a case proceeding IFP] at any time if the court determines that . . . the action . . . is frivolous or malicious . . . or fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2). A case is frivolous when "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also, e.g.*, *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (citing *Neitzke*). On factual frivolity, courts in this District have regularly held that when a complaint fails to allege what a defendant did that causes liability, the pleading lacks an arguable basis in fact—so is frivolous—for that defendant. *See, e.g.*, *Williams v. City of Minneapolis*, No. 22-CV-2369 (MJD/TNL), 2023 WL 2795858, at *2 (D. Minn. Feb. 2, 2023) (citing cases), *report and recommendation adopted*, 2023 WL 2795484 (D. Minn. Apr. 5, 2023); *Stanton v. Gomey Allenberg & O'Reilly, PC*, No. 22-CV-1706 (PJS/JFD), 2022 WL 3108027, at *2 (D. Minn. Aug. 4, 2022) (same).

When determining if a complaint states a claim on which a court may grant relief, a district court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833,

836 (8th Cir. 2014) (citing *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)). A complaint's factual allegations need not be detailed, but must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). A complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In assessing a complaint's sufficiency, a court may disregard legal conclusions that are couched as factual allegations. *See, e.g., id.* at 678 (citing *Twombly*, 550 U.S. at 555). A district court's consideration of whether a pleading states a claim is "context-specific"; a court must "draw on its judicial experience and common sense." *Id.* at 679; *see also, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (cleaned up)). Courts are to construe pro se complaints "liberally," but such pleadings must still allege enough facts to support the claims advanced. *See, e.g., Sandknop v. Mo. Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

### C.   Claims Against Defendants Kalis and Matteson

The Court will now turn to addressing the Complaint's various claims. As an initial matter, the Complaint has no specific allegations at all about Defendants Kalis and Matteson. (*See generally* Compl. 7–12.) The Complaint is therefore frivolous with respect to those Defendants, and the Court dismisses any claims against them without prejudice.

### D.    Claims Under 18 U.S.C. §§ 241–42

As noted above, the Complaint purports to bring claims under 18 U.S.C. §§ 241–42. (*See, e.g.*, *id.* at 6–7.) These are both federal criminal statutes: broadly speaking, § 241 bars conspiracies to "injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States," and § 242 targets those who "under color of any law, statute, ordinance, regulation, or custom, willfully subject[] any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."

As discussed below, Plaintiffs have other statutory vehicles to bring claims that government officials violated their constitutional rights—specifically, 42 U.S.C. § 1983. Sections 241 and 242, however, are criminal statutes, and they do not provide a private right of action in civil litigation. *See, e.g.*, *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts repeatedly have held that there is no private right of action under § 241 . . . ." (citing cases)); *Green v. Carlson*, No. 19-CV-1666 (ECT/SER), 2019 WL 5400509, at *4 (D. Minn. Oct. 22, 2019) ("Section 242 provides no private right of action." (citing cases)); *Howard v. Cross*, No. 23-CV-0349 (JWB/LIB), 2023 WL 2838133, at *2 (D. Minn. Feb. 24, 2023) (citing *Wadena* and *Green*), *report and recommendation adopted*, 2023 WL 2645056 (D. Minn. Mar. 27, 2023). As a result, Plaintiffs' claims under 18 U.S.C. §§ 241–42 are legally frivolous. The Court therefore dismisses the Complaint to the extent it brings claims under 18 U.S.C. §§ 241–42, and

because Plaintiffs cannot fix this problem, the Court dismisses these claims with prejudice.

### E.   Claims Under Americans with Disabilities Act

Before turning to Plaintiffs' claims under 42 U.S.C. § 1983, the Court will address Plaintiffs' purported claims under "Title II 12132 Discrimination and 12133—ADA." (*See* Compl. 6–7.) The Court construes Plaintiffs here as referring to the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327, 327–78 (codified as amended in scattered sections of 29 and 42 U.S.C.). Plaintiffs' references to "12132" and "12133" are presumably to 42 U.S.C. §§ 12132–33. These statutes are part of Title II of the ADA, which prohibits discrimination in the provision of "public services." *See, e.g.*, 42 U.S.C. §§ 12131–34. Section 12133 merely sets the remedies for violations of Title II, so it is § 12132 that governs standards for liability here.

Under § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." To state a § 12132 claim, a plaintiff must allege "(1) that [he or she] is a qualified individual with a disability; (2) that [he or she] was excluded from participation in or denied the benefits of [a public service's] services, programs, or activities, or was otherwise subjected to discrimination by the [public service]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of [his or her] disability." *Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020) (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010)); *see also, e.g.*, *Phillips v. City of*

*Minneapolis*, No. 21-CV-1463 (WMW/BRT), 2022 WL 484971, at *1 (D. Minn. Feb. 16, 2022) (citing *Baribeau*). Assuming for present purposes that Plaintiffs have adequately alleged discrimination—the Court need not, so does not, decide the issue—neither Plaintiff has alleged the first or third elements. With respect to Acker, there are no allegations about any disability whatsoever. As for Logering, the only disability-related allegations in the Complaint are assertions that Logering *lacks* a particular disability; there are no allegations that he was discriminated against based on any disability that he actually has.[6]

Given these failures of pleading, the Court concludes that the Complaint fails to state an ADA claim. The Court therefore dismisses the Complaint without prejudice to the extent it purports to state such a claim.

### F.    Claims Under 42 U.S.C. § 1983

What remains of Plaintiffs' federal-law claims are claims under 42 U.S.C. § 1983 and under various provisions of the U.S. Constitution. For present purposes, these amount to the same thing. When a plaintiff seeks to press claims under the U.S. Constitution, he or she cannot sue under the Constitution directly. Instead, the usual vehicle for constitutional claims against individuals acting under color of state law is 42 U.S.C. § 1983. *See, e.g.*, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution. . . .

---

[6]    Given the Complaint's allegations, the Court need not—so does not—address whether Defendants' alleged conduct might have violated § 12132 if Logering alleged that he did have some form of Asperger syndrome.

[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." (citing cases)); *cf. Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States."). So Plaintiffs' remaining federal-law claims are simply claims under § 1983.

Because Plaintiffs are proceeding under § 1983, the Court must consider the capacities in which Plaintiffs are suing any individual Defendants—that is, their individual capacities, their official capacities, or both. *Cf. Hafer v. Melo*, 502 U.S. 21, 25 (1991) (discussing differences between individual-capacity claims and official-capacity claims); *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (same (citing *Hafer*)). As an entity rather than an individual, the MCSD itself can only be sued in an official capacity; as for all the various individual Defendants, Plaintiffs appear to specify that they too are all being sued in their official capacities. As a result, then, the claims at issue here are all official-capacity claims.[7]

---

[7]    Because Plaintiffs have apparently elected to sue the individual Defendants in their official capacities, the Court need not—so will not—address whether Plaintiffs might have properly alleged claims against the individual Defendants if Plaintiffs had sued them in their individual capacities. The Court notes, however, that to the extent Plaintiffs did sue Defendants in federal court in their individual capacities, the resulting suit would demand consideration of so-called "*Colorado River* abstention," given the obvious parallels between this action and Plaintiffs' pending state-court action. *See, e.g.*, *Spectra Commc'ns Grp., LLC v. City of Cameron*, 806 F.3d 1113, 1120–21 (8th Cir. 2015) (discussing *Colorado River* abstention (citing cases)); *NDGS, LLC v. Radium2 Cap., Inc.*, No. 19-CV-1554 (SRN/BRT), 2019 WL 5065187, at *4–6 (D. Minn. Oct. 9, 2019) (same).

Plaintiffs' official-capacity claims, as presently pleaded, are nonstarters. The individual Defendants are identified as employees of Morrison County, the City of Pierz, or the State of Minnesota, so all the official-capacity claims here are effectively official-capacity claims against those entities. The Court can quickly eliminate Plaintiffs' official-capacity claims against any State employees to the extent that Plaintiffs seek damages—sovereign immunity bars any such claims. *See, e.g.*, *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997) (citing *Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989)); *Beaulieu v. Jesson*, No. 11-CV-2593 (DWF/JFD), 2023 WL 3125337, at *1 (D. Minn. Apr. 27, 2023) (citing cases). The Court will therefore dismiss those claims with prejudice as frivolous.

What remains are Plaintiffs' official-capacity claims against local and county employees, and against State employees for injunctive relief. But these claims fail as well. Under § 1983, governmental entities "are responsible only for 'their own illegal acts'"; they "are not vicariously liable . . . for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting and citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in *Connick*)); *see also, e.g.*, *Perkins v. Hastings*, 915 F.3d 512, 521 (8th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). This means that for a government itself to deprive someone of his or her constitutional rights, the relevant injury must have been due to "action pursuant to official municipal policy." *Connick*, 563 U.S. at 60 (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *id.* at 61 ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so

15

persistent and widespread as to practically have the force of law." (citing cases)); *see also, e.g.*, *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (making same points (citing cases)).

There are various ways to allege the relevant sort of "policy." *See, e.g.*, *Brewington*, 902 F.3d at 800–02 (discussing standards). But the Complaint here does not do so. Indeed, as far as the Court can tell, the only relevant allegations on this point are Plaintiffs' assertions that the individual Defendants *violated* state or county "ordinances, regulations or customs." (*See* Compl. 7.) That assertion, of course, undercuts the idea that official-capacity claims exist here. The upshot is that, as presently pleaded, the Complaint does not allege any proper official-capacity claims. The Court therefore will dismiss the Complaint with respect to any such claims for failure to state a claims. This means that the Court is dismissing all of the Complaint's claims under 42 U.S.C. § 1983.

### G.   Supplemental Jurisdiction

After dismissing the Complaint's § 1983 claims, all that remains are various state-law claims (i.e., claimed violations of state law, state polices, etc.). This raises the question of whether this Court should exert so-called supplemental jurisdiction. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." But § 1367(c)(3) also states that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."

In *Wilson v. Miller*, the Eighth Circuit discussed this issue in more detail:

A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity. [I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.

821 F.3d 963, 970–71 (8th Cir. 2016) (emphasis added; citations and internal quotation marks omitted); *see also, e.g.*, *Hayat v. Maine Heights, L.L.C.*, No. 21-CV-442 (ECT/KMM), 2021 WL 2379396, at *2 (D. Minn. June 10, 2021) (making same points (citing *McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020)).

*Miller* dictates that this Court ought not exercise supplemental jurisdiction, for the Court is dismissing all of Plaintiffs' potential federal-law claims long before trial. Furthermore, the *Miller* factors suggest no reason for this Court to retain supplemental jurisdiction over Plaintiffs' state-law claims. The Court will therefore dismiss those claims without prejudice. Combined with the Court's ruling above, this determination means that the Court is dismissing the Complaint in its entirety.

## H.   Remaining Motions

Given the Court's decision to dismiss the Complaint in its entirety, the Court also denies the IFP Applications and the Default Motion as moot.

# ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that**:**

1.      The Clerk of Court is ordered to refund this action's $402.00 filing fee to Plaintiffs Michael David Logering and Wendy Ann Acker;

2.      The Complaint is **DISMISSED WITHOUT PREJUDICE,** as frivolous under 28 U.S.C. § 1915(e)(2), to the extent it brings claims against Defendants David Kalis and Rick Matteson;

3.      The Complaint is **DISMISSED WITH PREJUDICE**, as frivolous under 28 U.S.C. § 1915(e)(2), to the extent it brings (1) claims under 18 U.S.C. §§ 241–42, and (2) official-capacity claims for damages against employees of the State of Minnesota;

4.      The Complaint is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim, under 28 U.S.C. § 1915(e)(2), to the extent it brings (1) claims under Title II of the the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327, 327–78; (2) official-capacity claims for injunctive relief against employees of the State of Minnesota; and (3) official-capacity claims against employees of Morrison County and the City of Pierz;

5.      The Complaint is **DISMISSED WITHOUT PREJUDICE** to the extent it brings claims under Minnesota "State Statutes, State Policies, county ordinances, regulations or customs" because the Court declines to exercise supplemental jurisdiction over those claims; and

6.      Plaintiffs' Applications to Proceed in District Court Without Prepaying

Fees and Costs (Doc. Nos. 4–5) and "Motion for Demand Default and Relief" (Doc.

No. 7) are **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: May 5, 2023                          _s/ Jerry W. Blackwell_____
                                            JERRY W. BLACKWELL
                                            United States District Judge